Good morning, Your Honors. Lucas Gaffney for the appellant, Tavares Chandler. The reason we're here today is because the district court, in our view, erroneously applied the ACCA, or a better way to put it is to categorize Mr. Chandler as an armed career criminal. Specifically, the court found that Chandler's predicate convictions for second degree kidnapping and conspiracy to commit robbery qualified as violent felonies under the ACCA statute and related case law. What we're asking the court to do is to reevaluate the district court's ruling, find that the ACCA was incorrectly applied, and then to remand the case for sentencing consistent with an opinion of that nature. I'd like to address the predicate felonies in turn, first starting with the kidnapping. As noted in our briefs, kidnapping in Nevada can occur under a variety of circumstances, some of which are violent, some of which are not. We identified in Bageline as one of the circumstances under which a nonviolent kidnapping can occur. The government has alleged that despite that nonviolent manner, second degree kidnapping in Nevada still qualifies as a violent felony under the ACCA, specifically under the residual clause. And then also the law. Kennedy, what's the difference in Nevada between what's called regular first degree kidnapping and second degree kidnapping? Second degree kidnapping is a Category B felony, and it includes the definition of it. But is there a different, you know, different element? There are different elements. First degree kidnapping is of a more violent nature. It doesn't allow for a nonviolent kidnapping to occur. All right. The government's alleging that the second degree kidnapping in this case is covered by the AC, the violent felony under the ACCA in two different respects. One is under the residual clause. Also, they're saying that it qualifies under the modified categorical approach, but only if the Court considers the grand jury transcript that was submitted in the supplemental excerpt. Okay. Counsel, under Delgado-Hernandez, we basically addressed the question of kidnapping and its relationship to the residual clause, right? Well, Your Honor, I know that the Court asked us to review that case, and I would say that under Delgado, it is a partial analysis, because U.S. v. Begay requires that there's two steps to analysis under the residual clause. I would submit that Delgado only deals with the step that focuses on the substantial risk of physical force. And in that respect, although I don't want to concede this on the record, I think that it may be applicable, but only partially so, because under Begay, you also have to look at the enumerated felonies and make a comparison of kidnapping to the enumerated felonies. And in Delgado, that didn't happen. They went through the first section, but they didn't hit the second step of Begay. And then also what I would like to point out is under the legislative history that's discussed in Scherbondy as well as Begay says that when you're looking at these enumerated felonies, they need to be construed very narrowly. There's a discussion of the legislative history in Begay and in Scherbondy which says that there was great debate when Congress was considering what felonies to include under the enumerated clause. And so I would submit to the Court that if kidnapping or even conspiracy to commit robbery, if Congress wanted to include those, they could have. But they didn't. And also in regards to Delgado, and this is maybe more of a side note, you know, because in Nevada there's different ways in which a kidnapping can occur, some of which are nonviolent. I believe you're referring to enveigling? That's correct. The Nevada kidnapping statute is very, very close to the Federal kidnapping statute, which we discussed in Delgado. That's correct. That's correct. And enveigling is one of the counts in the Federal kidnapping statute. I agree. And that's why I would say that Delgado has partial applicability here, but still doesn't complete the analysis under Begay. The government, in their brief, attempted to connect the dots between second-degree kidnapping and the enumerated felony of burglary. But, again, I would have to go back to the legislative history analysis under Begay in saying that those enumerated felonies, which essentially are property crimes, should have a narrow construction of them. And basically the government's argument is that a burglary and a second-degree kidnapping creates a potential confrontation or a violent – the potential for a violent confrontation. But I would submit to the Court that if a kidnapping is initiated under nonviolent means, that the chances of it then escalating into a more violent confrontation, I believe, would be reduced. Are there any statistics that you would rely upon? Not that I'm aware of off the top of my head, Your Honor. Are you going to address the other felony, too? Yes. The conspiracy to commit robbery. The government's asserting that under Nevada law, conspiracy to commit robbery qualifies as a violent felony under the ACCA. And obviously there are conflicting rulings amongst the sister circuits, specifically the Eleventh Circuit and the Tenth Circuit. The government cites to the Mendez case, which is a Ninth Circuit case from 1993, talks about conspiracy to commit the Hobbs Act robbery. And again, I would have to go back to Begay because you have a lot of analysis as to substantial risk of harm, but it doesn't go to that second step where it's compared to the enumerated felonies. And I would also point to U.S. v. Whitson. It's an Eleventh Circuit case from 2010 that deals with conspiracy to commit robbery. And basically what they say is that conspiracy with no overt act does not involve or does not pose the same degree of risk as a burglary. In the Eleventh Circuit case, did that – did the statute there punish conspiracy without proof of an overt act? No. It's – the case says that with no overt act, conspiracy to commit robbery is not a crime of violence. I'm sorry. So the statute there did not require proof of an overt act in order to be convicted of conspiracy. Did not, correct. Similar to Nevada. Similar to Nevada, which would be in contrast to some of the other cases that – in which courts have considered conspiracy because it does require proof of an overt act. That's correct. And so the conspiracy to commit robbery, again, what the government tries to do there is, you know, they rely on U.S. v. White, which is directly contradicted by U.S. v. Whitson. They just disagree on the fact that conspiracy without an overt act is purposefully and violently aggressive conduct. There's just a disagreement there. And so we would, you know, submit, obviously, that, you know, because there's these many of the circuits are saying that conspiracy without an overt act does not qualify as a violent felony, that we would ask the courts to do this. Has the government made a modified categorical approach argument in this case with respect to the conspiracy charge? No. Not that I'm aware of. They focused on the residual clause. Okay. But did they put in proof of what your client did in order to be convicted of conspiracy? Did he engage in an – was there proof of an overt act is what I'm trying to get at. No. But they – what we did was we looked at the charging documents. In this case, it would have been the guilty plea agreement as well as the information. And both of those documents just track the language of the statute. And so there isn't – we don't have an actual factual basis beyond those two documents to look at here. And I see I have one minute left. I'd like to reserve that for rebuttals. Of course. Mr. Smith. Good morning, Your Honor. Philip Smith, present on behalf of the United States. Your Honor, simply put, with regards to the – to Mr. Chandler's second-degree kidnapping conviction, he – the government admits that Mr. Chandler loses based on this Court's Delgado-Hernandez case. And that case interpreted California's kidnapping statute, which, similar to Nevada's, can be violated without the use of force. And in the Delgado-Hernandez case, the Court held that although the California kidnapping statute it issued did not include a force element, because the statute allowed for the commission of a kidnapping without force, an ordinary kidnapping under the statute presented a substantial risk of force, thereby triggering 18 U.S.C. Section 16's residual clause. And in this case, we're dealing with the Armed Career Criminal Act's residual clause, which, of course, requires a showing of a serious potential risk of injury. And I would submit to the Court that if this Court has already held that a kidnapping, whether accomplished via deceit, trickery, or fraud, involves a substantial risk of force, then it necessarily follows that the commission of that act would result or could potentially result in a serious potential risk of injury. If we felt that we needed more of an underpinning that exists in Delgado, are there any statistics, such as those cited by the Supreme Court, as to how many kidnappings result in injury? Your Honor, I'm not aware of any statistics. But my recall of the case that discussed statistics, I believe it may have been the Sykes case. It was. The Supreme Court. My recall of that case indicated that the Supreme Court stated that statistics are not necessary. Right. It's simply something that the Court can use if we're dealing with an offense that typically doesn't involve violence. But, Your Honor, I'd like the Court to take note that here we're talking about a kidnapping, an offense that is inherently violent, an offense that inherently contemplates the use of force against the person of another, whereas in a burglary, the potential for confrontation is somewhat more attenuated. In fact, your average burglar doesn't anticipate confrontation. He simply wants to get into the property, get whatever he wants to steal, and leave. In a kidnapping, the assailant is contemplating some kind of confrontation with the victim, because they are seizing that person's liberty. And with respect to Mr. Chandler's argument that because a Nevada kidnapping can be contemplated without the use of force, that that necessarily means it's a nonviolent offense, well, that fails to take into account the fact that even when a person is kidnapped via deceit or trickery, there always is the potential that they are going to realize what's really going on and then decide to resist. And therein lies the serious potential risk for injury. And the case law on point says that the Court doesn't have to determine that there is a 100 percent chance of injury or that the potential risk of injury is a metaphysical certainty, only that it exists. And I submit that in a case, the ordinary case of second-degree kidnapping, which, as this Court pointed out, is similar to the Federal definition of kidnapping, that serious potential risk of injury exists regardless of how the kidnapping is accomplished. But the problem with that, you know, that broad brush approach is I don't know what the percentage is because I don't know the figures, but I'm sure a large percentage of kidnappings are what you might call child abduction cases where the noncustodial parent kidnaps his or her own child, you know, who's a minor, could be even like two or three years old. And there's really, you know, almost no possibility of force, right, in those cases. So you sweep those in the same analysis, which to me doesn't make sense. Well, Your Honor, in a case that the Court just pointed out, say two custodial parents, one custodial parent unlawfully takes the child away from another, there is nevertheless a potential for a physical injury in such a case because the parent who has been, for lack of a better phrase, robbed of the child, once they confront the parent who unlawfully took the child, that sets the stage for a violent confrontation. And, again, the statute doesn't delineate who might sustain the injury. It doesn't say it has to be the victim. It doesn't say it cannot be the assailant. And, in fact, if we consider the Sykes case in describing why burglary is a violent crime because of the potential risk of injury, the Sykes case noted that it was a burglary presented a potential risk of injury to an innocent bystander who may come up on the scene or law enforcement or the property owner returning to their home to find, in fact, that they are in the process of being burgled. And I submit that the risk of injury present in the situation that the court just presented is somewhat analogous. Might that not sweep in too many crimes? Your Honor, I don't think so because, again, we're focusing specifically on the crime of kidnapping in this instance. And courts have held time and time again that kidnapping is an inherently violent offense. The essence of kidnapping is attaining a person against their will and without their consent, and specifically in the Nevada statute. And so to that extent, if this Court were to affirm that Mr. Chandler's second-degree kidnapping was a violent felony for purposes of the ACCA, it would not be the over-sweeping broad generalization that Your Honor has just posed. I'm wondering. I'm sorry. Go ahead. I'm wondering where you stop. Suppose a driver is driving with rude rage and starts bumping into another car. That presents a danger of violence. It does. And, Your Honor, that would actually – well, Your Honor, that actually would come under the categorical approach in 18 U.S.C. 924EB1 being a crime that involves the use of force against a person of another because what the court just described is a battery. What if you're simply tailgating at 100 miles an hour where there's a risk of injury, but you haven't touched the other car? And, Your Honor, I don't believe that simply tailgating a person involves a risk of injury, and not to mention that that doesn't seem like it would count as purposeful, aggressive, and violent conduct, which is also something that the court would consider. If you're half a foot behind the car tailgating at 100 miles an hour? In that instance, Your Honor, I believe it would be – it would be contingent upon the person's intent. For instance, if the intent was to try and strike the person's car or to instill fear in them, then that would qualify as an assault, which would also qualify as a categorical crime that involves the use of force or the threatened use of force against the person of another. Mr. Smith, let me ask you, are you still – you mean the government – at least in the alternative, depending on the modified categorical analysis on this one also? With regards to the grand jury transcript that the government submitted? No, Your Honor. The government submitted that simply as an alternative means for the court to affirm the district court's decision, but I don't believe the court needs to actually get that far. I believe on its face, second-degree kidnapping counts, specifically with regards to Chandler's conviction, which indicates that he pleaded guilty to detaining the woman against her will without her consent with the intent to keep her detained against her will, and therefore qualifies under a modified categorical analysis as a crime of violence. Counsel, in order for the government to prevail here, you're going to have to – you're going to have to show all three of the crimes, two of which are contested here, right? Yes, sir. You're going to have to win a conspiracy charge as well. Would you turn to that? Absolutely, Your Honor. Mr. Chandler loses regards to the conspiracy charge because, as this court held in Mendez, a Hobbs Act robbery, which similarly – excuse me, a conspiracy to commit a Hobbs Act robbery, which similarly does not require an overt act in furtherance of the conspiracy, is a crime of violence under Section 924C's residual clause, which again contemplates a crime that has – where a substantial force is likely to be used during the commission of the offense. How old is our Mendez case? The Mendez case, Your Honor, is from 1993. Okay. So it's pre-Begay, pre-Sykes. It is pre-Begay. However, in United States v. White, which is post-Begay, 2009 case out of the Fourth Circuit, which the Supreme Court denied cert on, that court held that a defendant's state conviction for conspiracy to commit an armed robbery without the requirement of an overt act is nevertheless still a violent felony under the ACCA residual clause because the conspiracy to commit robbery presents an immediate, serious, and foreseeable physical risk that arises concurrently with the formation of the conspiracy. And it also contemplated that when multiple individuals confer to commit a crime, the likelihood of the crime being committed is therefore increased. And in this case – Is there any contrary authority to White? There is. And Mr. Chandler's counsel cited it. And that's the Whitson case. Okay. So we have a split in the circuits. We do have a split in the circuits, but the overwhelming majority has held that – How many cases is an overwhelming majority? How many circuits? I have Sixth Circuit in U.S. v. Taylor, Fourth Circuit in U.S. v. Phan, spelled P-H-A-N, and the Second Circuit in U.S. v. Elder. And all of these did not require proof of an overt act? They all held that a Hobbs Act conspiracy is a crime of violence despite the fact that it does not require an overt act because a conspiracy to commit a violent crime poses a substantial risk of violence. Now, if I could briefly attempt to distinguish the – actually, my time is up, Your Honor. We've taken some of your time. I'll allow you another 30 seconds to finish, Your Honor. Thank you, Your Honor. Just with regards to the Whitson case, what I would ask the Court to consider when considering the Whitson case is simply the fact that – if I can find my note. In Whitson, Your Honor, it appears the Court appeared to have concluded that Begay required it to separate the conspiracy and the target offense, and so it simply considered the formation of an agreement in the abstract. But that's contrary to common sense because conspiracies cannot be divorced from their violent objective. In this case, we're not talking about conspiracy to commit mail theft. We're not talking about conspiracy to shoplift. We're talking about conspiracy to commit robbery. A Nevada conspiracy is a specific intent crime, which is actually, Mr. – my colleague incorrectly noted that it's not. But it is. And so the Court has to consider that this conspiracy we're talking about, the co-conspirators specifically agreed to commit a robbery, meaning they specifically agreed to use force against the person of another. Given the fact that the – But it's – but because there's no proof of an overt act required in Nevada, it's just talk. Your Honor, it is just talk. But again, the Court should consider the fact that this just talk leads to the substantial likelihood that the target offense is going to be committed. But it's sure a step back from an attempt, isn't it, or aiding and abetting or something else. Yes, Your Honor, it is a step back from an attempt. But again, I would cite to this Court's ruling in the Mendez case, which also we're just talking about talk with regards to a Hobbs Act conspiracy, which similarly does not require an overt act where this Court held that it was a crime of violence. And so the focus should then become on if a conspiracy to commit robbery is similar to one of the enumerated crimes, I submit it is. In this case specifically, it's burglary because it sets the stage for a violent confrontation, much like in a burglary case. Okay. Thank you, Mr. Smith. Thank you, Your Honor. Mr. Gaffney. Thank you, Your Honor. I'd like to just quickly address the circuit split under the conspiracy to commit robbery. On page 9 and 10 of our opening brief, we lay out those circuits which are in accord with our position. And that would be the Tenth Circuit and the Eleventh Circuit. And then in the alternative, there are circuits which absolutely require that an overt act be present. That would be the Fifth. That would be the Fifth, the Third, and the First. And the case law to support that's in our opening brief, pages 9 and 10. And just in a quick rebuttal to what Mr. Smith put forward. And then you agree that there are then a number of circuits that will consider this to be a crime of violence without proof of an overt act. Yes. Yes. The circuit, I think there's a split in the circuits, Your Honor. As far as the Nevada law on this, you know, I think we're kind of throwing around some hypotheticals in terms of kidnapping as to what may or may not pose a substantial degree of risk. And I think that the ambiguity in the statute under the rule of lenity needs to be resolved in favor of the defendant. And the circuit, I think there's a split in the circuits, Your Honor.  some hypotheticals in terms of kidnapping as to what may or may not pose a substantial   resolved in favor of the defendant. and what else do we have to show? It has to show a comparison to the enumerated felonies in the residual clause. And even though in Delgado we discussed the fact that both Congress and every jurisdiction in the United States considered kidnapping to be a crime of violence, that's not sufficient? No. There still has to be that second step, the second step in Bigay where it's compared to the. And how is it that kidnapping could possibly be treated less than burglary? Burglary does not necessarily involve confrontation with somebody. Kidnapping absolutely does. Well, not always. Not always in Nevada. Under the ordinary crime of kidnapping, which is I think what Delgado talks about. It certainly involves a confrontation or at least contact with a live person, which burglary does not. Well, I think that kidnapping, when it's invigilating, when it's deceit or fraud, it involves the potential for a violent confrontation. It involves a risk. Yes. But it's not a – not every scenario under our statute in Nevada is going to lead to a violent confrontation. I mean, I think we're – you know, like I said, we have to kind of throw around hypotheticals. That's also true of burglary. But the Court said that burglary was a crime of violence. Yeah. That's correct. Well, just on – lastly, in regards to conspiracy to commit robbery, you know, the ACCA is designed to put away offenders who are violent. And so I would submit to the Court that if you have a person who has been convicted of three counts of – or three convictions for conspiracy to commit robbery, that is a person who is not the type of person who would pull a gun or point a gun and pull the trigger under begay. It's not a person who has outwardly aggressive, purposeful, violent behavior. You know, we're basically – it's a mere agreement to do something unlawful. And with that, I submit it, Your Honor. Okay. Thank you, Mr. Gaffney. We thank both counsel for what is an interesting case and for a case that was well argued.
judges: Wood, Tashima, Bybee